# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| ANNIE OAKLEY ENTERPRISES, INC., | ) | |
| and RENEE GABET, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:09-CV-72 JVB |
| | ) | |
| SUNSET TAN CORPORATE & | ) | |
| CONSULTING, LLC, DEVIN HAMAN, | ) | |
| and JEFF "BOZZ" BOZIGIAN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on an amended motion to dismiss filed by Defendants,

Sunset Tan Corporate & Consulting, LLC; Devin Haman; and Jeff Bozigian on August 7, 2009.[1]

Plaintiffs, Annie Oakley Enterprises, Inc. and Renee Gabet, responded to the motion on August

24, 2009, to which Defendants replied on September 8, 2009.

For the following reasons, the motion is granted.

## Discussion

Defendants contend the Court lacks personal jurisdiction over them and that Plaintiffs'

complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants

further contend that the complaint should be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(3), alleging that a substantial part of the events giving rise to Plaintiffs' alleged

---

[1] After the original motion to dismiss was filed (DE 12), Defendants became aware during mediation that some of the allegedly infringing products were warehoused in Indiana. Defendants thus filed an amended motion to dismiss (DE 19) and supplementary affidavits to address this point. Accordingly, as the amended motion to dismiss supersedes the original motion to dismiss, the original motion to dismiss will be deemed moot.

causes of action for trademark infringement and related claims did not occur in the state of
Indiana as required under 28 U.S.C. §1391(b).

Defendants assert the following facts: Defendant Sunset Tan was organized in the state
of California in December 2007. Defendant Sunset Tan does not conduct business in Indiana, is
not registered to do business in the state, has no offices or employees in Indiana, does not own
any real property in Indiana, and does not own any bank accounts or governmental licenses in
Indiana. Defendant Sunset Tan states that, contrary to the allegations contained in the complaint,
it is not licensed to offer franchises in the state of Indiana (or any other state).

Defendants state that Defendant Sunset Tan is the owner of the mark LA SUNSET TAN
A HAMAN & BOZZ PRODUCTION, which is registered on the principal register of the United
States Patent & Trademark Office (USPTO) at Registration No. 3593880 for "tanning salon
services" (Registered Mark). In addition to using, and licensing others to use, the Registered
Mark in connection with these tanning salon services, Defendant Sunset Tan also uses and
displays the Registered Mark in marketing some of its high-end indoor tanning lotions.

Plaintiff Gabet owns a federal trademark registration for the mark SUNSET in
connection with skin care lotions, and Plaintiff Annie Oakley is the exclusive licensee of this
registration.

Defendants' tanning lotions display the marks "ST SUNSET TAN" and "ST LA
SUNSET TAN" and are sold and made available for sale exclusively in tanning salons that are
owned and operated by either: (1) Defendant Sunset Tan's affiliates; or (2) independent third-
parties that have entered into an agreement with Defendant Sunset Tan's affiliate, Sunset Tan
Franchising, L.P. ("STF"). Defendants state that there are currently seven independent third-

parties in California, and one each in New Jersey, Texas, and Nevada. Defendants point out that there has never been a salon located in Indiana or anywhere in the Midwest. Defendants state that none of the lotions sold or offered by Defendant Sunset Tan bearing the allegedly infringing marks "Sunset Tan" or "LA Sunset Tan" were manufactured or distributed in the state of Indiana by Sunset Tan or any of its affiliate companies.

In June 2007 Sunset Tan entered into an agreement with Cal Tan, LLC to manufacture and distribute tanning lotions. Cal Tan is an Indiana limited liability company, but Defendant Sunset Tan states that it did not commence its relationship with Cal Tan in Indiana. Rather, Defendant Sunset Tan negotiated the terms of the Agreement with Cal Tan's office in California and all of the contract negotiations took place in California or Pennsylvania, where Defendant Sunset Tan's counsel is located. Defendant Sunset Tan states that the parties executed the Agreement in California, and under Cal Tan's signature line in the Agreement, it lists a Los Angeles, California address. The choice of law and venue provisions of the Agreement provide that California law will control and that any action or proceeding related to the Agreement shall be brought only in a court in the county of Los Angeles, state of California.

It was Defendants' belief, based on information received from Cal Tan, that Cal Tan manufactures and labels the lotions in New Jersey. After reviewing documents produced by Cal Tan in response to this litigation, Defendants have learned that two of the allegedly infringing lotions are warehoused in, and shipped from, Indiana.

Cal Tan's invoices state that payments be made to an Indianapolis address. Defendant Sunset Tan states that these invoices are paid either by its affiliate, DLJ Marketing, LLC, a Nevada limited liability company, or by affiliate-owned companies.

Defendant Haman states that he is a resident of California and does not own any bank accounts, personal property, or other assets in the state of Indiana. Haman, who was born in Indiana, further states that his only contacts with Indiana since 1985 have been personal visits every two or three years, with the last visit occurring in June 2004.

Defendant Bozigian states that he is a resident of California and does not own any bank accounts, personal property, or other assets in Indiana.[2] Bozigian further states that he visited Indiana for the first and only time several years ago to attend a matter unrelated to the tanning lotions at issue. Bozigian states that he does not have any governmental licenses to do business in Indiana.

Defendant Sunset Tan is the registrant of, and displays content at, the website known as sunsettan.com. On July 28, 2008, this website began selling clothing items through an online store. Defendants state that if a consumer makes a purchase from the online store, that customer enters into a contract with a third party, rather than with Defendant Sunset Tan. Since the online store became operational, only three sales to residents of Indiana have been made, totaling approximately $209.00. Defendants state that as the online store only sells apparel items, none of the sales were related to the tanning lotions at issue. Additionally, all the lotions on display on the website display the Registered Mark LA SUNSET TAN A HAMAN & BOZZ PRODUCTION rather than the allegedly infringing marks LA SUNSET TAN or SUNSET TAN.

In 2007 the E! television network began broadcasting a reality television series based primarily on the day-to-day operations of certain corporate-owned salons in California entitled "Sunset Tan." This show aired for two seasons, but has since been cancelled. Both Bozigian

---

[2] Both Haman and Bozigian serve in a corporate capacity as co-managers of Defendant Sunset Tan.

and Haman were featured on this television show, but no part of the series was filmed in Indiana. Additionally, no tanning lotions were offered for sale during the show's televised broadcasts and no advertisements or other promotional materials were purchased or run with respect to any of Defendant Sunset Tan's tanning lotions during the time slot that "Sunset Tan" was broadcast, or during any other time slot. Defendants assert that the broadcast was done by the network and that Defendants did nothing to specifically target Indiana residents.

Plaintiffs filed this action on March 20, 2009, alleging federal trademark infringement under 15 U.S.C. §1114 , and related claims for trademark dilution and false designation of origin under 15 U.S.C. §1125 (Lanham Act), as well as claims for declaratory judgment, unfair competition, interference with prospective economic advantage and unjust enrichment. In the present amended motion to dismiss, Defendants argue that the complaint should be dismissed for lack of personal jurisdiction.

Due process mandates the dismissal of a case when personal jurisdiction is properly challenged and found to be lacking. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). "[O]nce a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). When a court's decision is based on written submissions beyond the pleadings without the benefit of a hearing, the plaintiff is only required to "make out a prima facie case of personal jurisdiction." *Purdue Research Found.*, 338 F.3d at 782 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether the prima facie standard has been met, a

court resolves all disputes concerning relevant facts presented in the record in favor of the plaintiff. *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983)).

If jurisdiction is exercised on the basis of a federal statute that does not authorize nationwide service of process, the law requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction. *United States v. Martinez De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990). The Lanham Act does not authorize nationwide service of process; therefore, the standards for personal jurisdiction are those of the forum state. 15 U.S.C. §1121(a). Indiana's long-arm statute, set forth in Indiana Trial Rule 4.4(A), governs personal jurisdiction in Indiana. Although Rule 4.4(A) enumerates eight bases for the assertion of jurisdiction on the basis of a defendant's actions, the rule also includes a provision that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. R. Tr. P. 4.4(A). Therefore, a court has personal jurisdiction over defendants to the limit allowed by the Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966-67 (Ind. 2006).

Due process mandates that a non-resident defendant have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, (1987). A court must examine whether a defendant's contacts with the state are such that the defendant "should reasonably anticipate being haled into court [in the forum state]," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297(1980)), because the defendant has "purposefully avail[ed] itself of the privilege of

conducting activities within the forum State," *Id.*. at 475, (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In the present case, Plaintiffs allege that the Court has personal jurisdiction over Defendants due to "Defendants' systematic contacts with, and purposeful availment of, this forum." Complaint at ¶4.

Personal jurisdiction under the Due Process Clause may be either general or specific. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (general jurisdiction); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 466-67 (1985) (specific jurisdiction). If the defendant's contacts with the forum state are significant enough to support a finding of general or specific jurisdiction, the court must then determine if the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Id.*. When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively. *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980)).

General jurisdiction permits a federal district court in Indiana to exercise personal jurisdiction over a nonresident defendant regardless of the subject matter of the litigation only when the defendant has "continuous and systematic general business contacts" with Indiana. *Purdue Research Found.*, 338 F.3d at 787. The Court of Appeals for the Seventh Circuit has explained that "[t]hese contacts must be so extensive to be tantamount to [the nonresident defendant] being constructively present in [Indiana] to such a degree that it would be fundamentally fair to require it to answer in [an Indiana court] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Id.* (emphasis in original). "In

general, the standard for establishing general jurisdiction is a high one." *Dawson*, 216 F.Supp.2d at 759 (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990)).

Several factors are generally considered when determining if general jurisdiction can be properly exercised over a defendant, including:

(1) whether and to what extent the defendant conducts business in the forum state;

(2) whether the defendant maintains an office or employees within the forum state;

(3) whether the defendant sends agents into the forum state to conduct business;

(4) whether the defendant advertises or solicits business in the forum state; and

(5) whether the defendant has designated an agent for service of process in the forum state.

*Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc*., 530 F.Supp.2d 1008, 1015 (N.D.Ill. 2008) (citing *Helicopteros*, 466 U.S. at 416).

While it is unnecessary for Defendants to have a physical presence in the state to be subject to personal jurisdiction, Defendants' out-of-state actions must have a significant enough effect on in-state activities to satisfy the requirements of due process. *See Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). It is well established that merely some activity in Indiana is insufficient to establish jurisdiction. *See, e.g., Purdue Research Found.*, 338 F.3d at 787 (holding that defendant's several confidentiality agreements with an Indiana corporation and a few visits to Indiana in furtherance thereof were "simply insufficient to satisfy the demanding standard set forth ... in Helicopteros "); *Elayyan v. Sol Melia, SA*, 571 F. Supp.2d 886, 898 (N.D. Ind. 2008)(stating that foreign defendant's multi-year business relationship with Indiana corporation, communications with Indiana corporation, provision of services to Indiana residents, and maintenance of website available to Indiana residents were

"obviously far too modest to support general jurisdiction."); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1434 (N.D. Ind.1994) (holding that contacts were not of the quality or quantity necessary to enable general jurisdiction over the non-resident defendant despite sales to Indiana customers amounting to 8% of total annual sales and one employee's visits to Indiana every two to three months and his calls to Indiana customers). This is because defendants are entitled to a "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472.

As noted earlier, Defendants herein claim that Defendant Sunset Tan does not have any property, offices, bank accounts or employees in Indiana. Additionally, Defendants contend that Defendant Sunset Tan does not have any governmental licenses or other licenses to do business in this forum.

Plaintiffs, however, contend that the allegedly infringing lotions are manufactured, distributed and sold in Indiana, by a company (Australian Gold) run by Stephen Hilbert, an Indiana resident. Plaintiffs further claim that Haman is "from Indiana" and that Defendant Sunset Tan touts its Indiana connections to promote its goods and services in Indiana. Additionally, Plaintiffs claim that Defendants are in the process of further expanding their Indiana presence by opening additional retail outlets in Indiana. Plaintiffs appear to base these allegations on an article in the *Indianapolis Star* newspaper on January 13, 2009 (*See* Exhibit D to Plaintiff's Memorandum in Opposition). Plaintiffs have also submitted as exhibits invoices from Cal Tan and Australian Gold to Defendant Sunset Tan, showing that payments were to be remitted to Indiana addresses.

Defendants, in response, reiterate that Defendant Sunset Tan did not commence its

relationship with Cal Tan in Indiana, all the negotiations regarding the Agreement took place in California and Pennsylvania, the negotiations were with Cal Tan's office in Los Angeles, California, the parties executed the Agreement in California, Cal Tan's address under its signature line is Los Angeles, California, and the choice of law and venue provisions of the Agreement provide that California law shall govern the Agreement and that all actions arising out of the Agreement shall be brought only in Los Angeles, California.

With respect to Plaintiffs' assertion that the allegedly infringing lotions are actually manufactured and sold to third-parties in Indiana pursuant to the Agreement, Defendants rely on the affidavit of Defendant Haman and "Schedule B."   According to Haman

> 12.    The lotions manufactured under the Agreement are manufactured and labeled in the state of New Jersey.  I had understood that Cal Tan shipped the lotions from New Jersey as well, but have subsequently learned that Cal Tan maintains a warehouse in Indiana from which certain lotions are stored and shipped.  See emails dated July 20, 2009, attached as Schedule B.

The emails (Schedule B) referred to in Paragraph 12 state that:

> We just got back from mediation with Renee Gabet and we are trying to get this resolved.  Her attorneys said that they requested sample bottles of our private label product and that it came from your warehouse in Indiana.  Is that correct?  And they said that they were told that there is a lot of our private label product stored and shipped from Indiana.  In our last conversation you said that the products are stored and shipped from New Jersey.  Do you know if the product was shipped to them from Indiana?  How much of our product is stored and shipped from Indiana?

The response was:

> Devin [Haman] product is manufactured in New Jersey but shipped from Indiana and there is not a lot of your private label as of this date as you are aware.

Defendants characterize this as "temporary warehousing in Indiana" and argue that as the only point at which any of these allegedly infringing lotions are located in Indiana, the warehousing does not satisfy the "purposeful availment" requirement necessary to support general jurisdiction.

Defendants are correct. Cal Tan's unilateral decision to warehouse certain of the allegedly infringing lotions in Indiana is not tantamount to an intentional or directed act by Defendants at this forum. *See Nu-Way Systems of Indianapolis v. Belmont Marketing, Inc.*, 635 F.2d 617 (7th Cir. 1980).

With respect to the *Indianapolis Star* article, Defendants state that:

> [I]t is clear that this publication is nothing more than a public interest piece published by an Indianapolis paper because Defendant Haman was born in Indiana and, at the time of publication, had gained fame in pop culture through his involvement in the "Sunset Tan" reality television show.

Defendants argue that they are not aware of any Indiana court holding that it has general jurisdiction over a defendant based on a newspaper article or other publication within the state. Plaintiffs have not provided any legal support for their assertion that a newspaper article is sufficient evidence to prove general jurisdiction.

With respect to Plaintiffs' claim that Defendant Sunset Tan is planning on "expanding their Indiana presence by opening outlets in Indiana," which stems from the newspaper article, Defendants adamantly insist that they do not own, operate or develop any tanning salons, nor do they have any intention of doing so in the future. Defendants further note that the *Indianapolis Star* article states that the company is "currently looking for an area representative to focus on the Indiana market" and that "franchise salons" are being contemplated in Indiana. Defendant Sunset Tan explains that any expansion into the forum state would be through Sunset Tan Franchising, LP, (STF) and not Defendants.

Defendants have submitted uncontroverted evidence that they have not attempted to offer and sell any franchises in Indiana, and that they have no license to do business in this forum. *See*

Defendants' Memo in Support, Exhibit A, at ¶7. The actions, or anticipated actions, of STF and its representatives cannot be imputed to Defendants for purposes of obtaining personal jurisdiction[3].

Defendants have relied on *Elayyan v. Sol Melia, SA*, 571 F.Supp.2d 886, 898 (N.D. Ind. 2008). In *Elayyan*, the Court held that a foreign defendant's multi-year business relationship with an Indiana corporation, communications with that Indiana corporation, provision of services to Indiana residents, and maintenance of a website available to Indiana residents were "obviously far too modest to support general jurisdiction." Although Plaintiffs argue that Defendants "have confessed to having a systematic relationship with Indiana companies Australian Gold[4] and Cal Tan", the only evidence in this case is that all of the details and events of the relationships happened outside of Indiana. Merely to do business with an Indiana corporation is insufficient to confer general personal jurisdiction. Rather, as discussed above, the factors to consider are whether the defendant conducts business in the forum state, whether the defendant maintains an office or employees in the forum state or sends agent into the forum state to conduct business, whether the defendant advertises or solicits business in the forum state and whether the defendant has designated an agent for service of process in the forum state. *Central States*, 530 F. Supp. 2d at 1015. Plaintiffs have not shown that *any* of these factors are satisfied in the present case. *See also, Knowledge AZ, Inc. v. Jim Walter Resources, Inc.*, 452 F. Supp.2d 882, 892 (S.D. Ind.

---

[3] Defendants have indicated that as of the date of their reply memo, September 8, 2009, there were no franchised tanning salons owned or operated in Indiana.

[4] According to Bozigian's Affidavit, Bozigian receives invoices from Australian Gold, but the invoices are not due from or paid by Bozigian personally. Additionally, none of the invoices directed to Bozigian's attention at Sunset Tan relate to the purchase of the allegedly infringing lotions. Rather, the invoices relate to a sales-tracking program that Australian Gold licensed to Sunset Tan Corporate and Consulting to track all sales of tanning services and products. Bozigian testified in his Affidavit, upon information and belief, that the last invoice from Australian Gold was received in 2005.

2006)(plaintiff's claim of systematic activity by defendant within the forum state was borderline frivolous because plaintiff did not claim any of the standard bases of jurisdiction). Additionally, it is abundantly clear that neither Haman nor Bozigian have the requisite business contacts or residence with the forum state to confer general jurisdiction. Although Plaintiffs note that Haman is "from Indiana," they fail to note that although Haman was born in Indiana, he has not lived in Indiana for the past 25 years. (Haman Aff. at 3.) Bozigian's contacts are even more limited.

Defendants next assert that they are not subject to specific jurisdiction in Indiana. An Indiana court may exercise specific jurisdiction only when the nonresident defendant purposefully availed itself of the privilege of conducting activities within Indiana and the plaintiff's claims arise out of the Defendant's contacts with Indiana. *See LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006) (citing *Helicopteros*, 466 U.S. at 414). Purposeful availment exists only when a nonresident defendant has deliberately engaged in significant activities within the forum state or has created continuing obligations between itself and a resident of the forum state. *See Purdue Research Found.*, 338 F.3d at 780-81; *Slurry Systems*, 2005 WL 2240064, at * 6. In this analysis, the focus is on the defendant's activities within the forum state, not on those of the plaintiff. *See Purdue*, 338 F.3d at 780 (citing *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen*, 444 U.S. at 298). The purposeful availment analysis "ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Id.*. (citing *Burger King*, 471 U.S. at 474) (emphasis added). This requirement is satisfied only if the plaintiff can show that the controversy is "related to or arises out of the defendant's contacts with the forum state." *LinkAmerica*, 857 N.E.2d at 967 (citing *Helicopteros*, 466 U.S. at 414); *see also Rieke Corp. v.*

*Am. Flange & Mfg. Co., Inc.*, No. 1:06-CV-275, 2007 WL 1724897, at *3 (N.D. Ind. June 12, 2007). Additionally, a court will decline to exercise specific jurisdiction if forcing the defendant to litigate in the forum is not fair and reasonable. *Burger King*, 471 U.S. at 477.

Plaintiffs allege that Defendants have purposefully availed themselves of this form, and aver the following specific actions: (1) the sale, offer for sale, and marketing "of the subject infringing goods in this judicial district directly through their Web sites, including http://www.sunsettan.com and via product placement on their reality television series, which is shown nationally on a cable television and direct broadcast satellite channel"; and (2) through the completion of their franchise registration process and offering of franchise opportunities in Indiana. *See* Complaint at ¶4.

Defendant Sunset Tan has submitted uncontroverted evidence that it has not submitted applications to any state for the right to sell, or offer to sell, franchises. (Haman Aff. at ¶7). Moreover, as Defendants note, even if they had registered to sell and offer franchises in Indiana, this would be insufficient to confer specific jurisdiction over Defendants because Plaintiffs' claims for trademark infringement and declaratory relief do not "arise out of or substantially relate to these purposefully established contacts." *See Helicopteros*, 466 U.S. at 414. Rather, Plaintiffs' claims are based on Defendants' sale of tanning lotions under the allegedly infringing marks "Sunset Tan" and/or "LA Sunset Tan". (Complaint at ¶¶4, 37, 44).

Defendants further argue that Defendant Sunset Tan's use and maintenance of an interactive website, which does not even sell the allegedly infringing lotions, is incapable of conferring specific jurisdiction. District courts in the Seventh Circuit have recently held that "in a trademark infringement case in which internet contacts are at issue, a two-track analysis must be

undertaken" with respect to personal jurisdiction: first a court must determine whether specific jurisdiction is proper under the "effects test"; and second, a court must "analyze whether the law permits personal jurisdiction over a Defendant based solely on the website(s) it operates." *Family Watchdog, LLC v. Schweiss*, 2009 WL 276856 at *4 (S.D. Ind. 2009) (citing *Search Force, Inc. v. Dataforce International, Inc.*, 112 F.Supp.2d 771 (S.D. Ind. 2000)).

Under the "effects test", specific jurisdiction may be established by a showing of: (1) the defendant's purposeful availment of the benefits and protections of the laws of the forum; and (2) harm to the individual within the state where the harm is both intentional and aimed at the forum state. *Watchdog, LLC*, 2009 WL 276856 at *4 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The *Watchdog* Court was careful to note that, "in a trademark case, courts are to be wary of conflating a knowing infringement with international harm aimed at the forum." *Watchdog, LLC*, 2009 WL 2768456 at *4 (citing *Nerds on Call, Inc. (Indiana) v. Nerds on Call, Inc. (California)*, 598 F.Supp.2d 913 (S.D.Ind. 2008)).

Jurisdiction may be proper when the injury to the trademark occurred in Indiana, but only if the existence of other purposeful contacts with the forum are established. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 412 (7th Cir. 1994). In *Indianapolis Colts*, the Court of Appeals for the Seventh Circuit determined that jurisdiction was proper in Indiana over a non-resident defendant because: (1) the infringement and injury occurred in Indiana; and (2) the defendant intentionally planned to target Indiana customers by broadcasting its games in Indiana, where "the largest concentration of consumers" were located.

Defendants maintain that their use of the website and other alleged conduct is not sufficient to establish jurisdiction under the "effects test." Defendants reiterate that Defendant

Sunset Tan did not sell any lotions on its website, and thus there could be no harm from the sale of these allegedly infringing products in Indiana. Moreover, there are no allegations that the website intentionally targeted anyone in Indiana. Rather, Plaintiffs allege that Defendant Sunset Tan's website will result in customer confusion. Defendants assert that even if Plaintiffs alleged that such confusion occurred in Indiana (which they have not), it has repeatedly been held that customer confusion alone is insufficient to rise to the level of "targeting," which requires that the "customer confusion in a particular forum somehow bear that defendant's fingerprints." *Watchdog, LLC*, 2009 WL 276856 at *6 (even though Plaintiff demonstrated two specific instances of customer confusion from Defendant's web-related activity, personal jurisdiction was not proper because defendant did not show "affirmative, intentional targeting in the context of customer confusion."); *see also, Nerds on Call*, 598 F.Supp.2d 913 (S.D. Ind. 2008) (defendant must muster some evidence of intentional targeting of plaintiff's customers in the resident state of Indiana, otherwise any "trademark defendant who operates a website [would be subject] to personal jurisdiction in any jurisdiction.").

Defendants note that Plaintiffs' complaint does not allege actual confusion in Indiana resulting from Defendant Sunset Tan's website or any intentional targeting of Indiana customers by the website.

Plaintiffs attempt to rely on the framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). In *Zippo*, the court stated:

> [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents

of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g.*, *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g.*, *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996).

\* \* \*

[W]e note that this is not an Internet advertising case in the line of *Inset Systems* and *Bensusan*, *supra*. Dot Com has not just posted information on a Web site that is accessible to Pennsylvania residents who are connected to the Internet. This is not even an interactivity case in the line of *Maritz*, *supra*. Dot Com has done more than create an interactive Web site through which it exchanges information with Pennsylvania residents in hopes of using that information for commercial gain later. We are not being asked to determine whether Dot Com's Web site alone constitutes the purposeful availment of doing business in Pennsylvania. This is a "doing business over the Internet" case in the line of *CompuServe*, *supra*. We are being asked to determine whether Dot Com's conducting of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania. We conclude that it does. Dot Com has contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania.

*Zippo*, 952 F.Supp. at 1124-26 (footnote omitted).

Without a doubt, Plaintiffs' reliance on *Zippo* is misplaced. In *Zippo*, the Pennsylvania residents were specifically targeted. In the present case there is simply no evidence of Indiana residents being targeted by the website at issue; moreover, the evidence is that only three sales were made to Indiana residents who bought an insignificant quantity of goods from the website— goods that were not even the allegedly infringing products.

Turning to the issue of whether the nationally broadcast reality television show "Sunset

Tan" is grounds for exercising specific jurisdiction, Defendants note that while there do not appear to be any Indiana decisions dealing directly with this issue, there are several opinions from district courts in the Northern District of Illinois that hold that, as a matter of law, the national broadcast of a television program does not give rise to personal jurisdiction in every state. *See*, *e.g.*, *Publ'ns Intern, Ltd. v. Simon & Schuster, Inc.*, 763 F. Supp.309, 312 (N.D. Ill. 1991)(holding that the broadcast of a television show in the forum state did not support personal jurisdiction over the defendant producer in plaintiff's action for declaratory relief regarding copyright infringement); *see also*, *Woodard v. Jackson*, 2004 WL 771244 (S.D. Ind. 2004) at *6 (holding that defendant Michael Jackson's agreement to allow a third party to market and exploit his music nationally was insufficient to establish personal jurisdiction over him in Indiana for plaintiff's cause of action for trademark infringement). Plaintiffs have not presented any evidence which would support the exercise of specific jurisdiction over Defendants based on their reality television program.

Next, Defendants argue that Defendant Sunset Tan's agreement with Cal Tan (an Indiana business) to manufacture lotions is not sufficient to confer specific jurisdiction.[5] Defendants have directed the court to *Baseball Card World, Inc. v. Pannette*, 583 N.E.2d 753 (Ind. App. Ct. 1991), for guidance as to when a business transaction can subject a non-resident defendant to personal jurisdiction in light of the traditional notions of fair play and justice set forth in *International Shoe*.

In *Pannette*, non-resident defendants (a company and its agent) entered into a one-year

---

[5] Plaintiffs assert that Defendant Sunset Tan has contracted with Australian Gold to "deal in the infringing product." However, the only evidence is that Defendant Sunset Tan had an Agreement with *Cal Tan* to manufacture and ship the product, and that Defendant Sunset Tan's business dealings with Australian Gold related solely to the use of sales-tracking software.

distributorship agreement with an Indiana company, Baseball Card World, Inc., whereby Baseball Card would supply products to defendants. *Id*. at 754. The parties met and began their relationship in Illinois; the terms of the contract were negotiated and agreed upon in Pennsylvania where the defendants were located. *Id.* Over the term of the agreement, defendants placed orders for goods by telephoning Baseball in Indiana (2–3 times a week). *Id.*. After these orders were made, defendants would send payment checks to Baseball Card in Indiana. About five months into the agreement, two of defendants' checks were returned for insufficient funds and Baseball Card sued for breach of contract in Indiana. *Id.*.

The *Pannette* court affirmed the trial court's ruling that Indiana did not have personal jurisdiction over the non-resident defendants because, among other things, the parties did not begin their relationship in Indiana, the defendants did not personally appear or reside in Indiana, the contact that formed the basis for the suit was not executed in Indiana, no contract negotiations occurred in Indiana, and the defendants did not maintain any offices or other business in Indiana. *Id.*. at 755.

The *Pannette* court found that, in light of the above, the defendants did not have the minimum contacts required, despite the fact that defendants knew that they were dealing with an Indiana company, entered into a distributorship agreement with Baseball Card, telephoned and placed orders to Baseball Card in Indiana 2–3 times a week for about five months, and mailed checks to Indiana. *Id.*.

The Court agrees with Defendants that, applying the facts of *Pannette* to the case at bar, Defendant Sunset Tan does not have the requisite minimum contacts with Indiana resulting from its agreement with Cal Tan to manufacture lotions. The following facts are critical in this

analysis:  Defendant Sunset Tan commenced its relationship with Cal Tan in California,

Defendants never appeared or resided in Indiana, the Agreement was entered into in California,

all contract negotiations took place in California or Pennsylvania, and Defendant Sunset Tan does

not maintain any office or other businesses in Indiana.  Finding specific jurisdiction would offend

the traditional notions of justice and fair play because Defendant Sunset Tan cannot be said to

have purposefully availed itself of the laws of Indiana nor could it have reasonably foreseen being

haled into court in Indiana as a result of the Agreement.  *See Hotmix & Bituminous Equipment,*

*Inc. v. Hardrock Equipment Inc.*, 719 N.E.2d 824, 827 (Ind. Ct. App. 1999), citing *Worldwide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980).

In their response to the amended motion to dismiss, Plaintiffs argue that Defendants have

"entered this forum via their attempt to contract with them."  It is undisputed that sometime prior

to this lawsuit being filed, Defendant Sunset Tan contacted Gabet and attempted to have Gabet

sign a Consent Agreement in which Gabet "consents to the registration and use of the mark

SUNSET TAN . . . by applicant Sunset Tan . . ."  Gabet declined to enter into the Consent

Agreement.  Plaintiffs argue that "attempts to contract" can lead to a reasonable anticipation of

being haled into court in that state.  Plaintiffs cite *Wisconsin Electrical Manufacturing Company,*

*Inc. v. Pennant Products, Inc.*, 619 F.2d 676 (7th Cir. 1980); *Radio Picture Show v. Exclusive*

*International Pictures, Inc.,* 482 N.E.2d 1159, 1164 (Ind.Ct.App. 1985); *Griese-Traylor*

*Corporation v. Lemmons*, 424 N.E.2d 173, 180 (Ind. Ct. App. 1981); and *Suyemasa v. Myers*, 420

N.E.2d 1334, 1342 (Ind.Ct.App. 1981).

As Defendants point out, the defendant(s) in each of the cases cited above actually entered

into agreement with the plaintiff(s).  Significantly, the underlying claim in each case arose under

their respective agreements.  Additionally, the contracting parties in the cited cases had more substantial contact with the forum state at some stage of the formation, or negotiation of the contract at issue, or both.   The Court agrees with Defendants that the cited cases do not support the contention that Defendant Sunset Tan is subject to personal jurisdiction on the basis of its attempt to enter into the Consent Agreement with Gabet.  No agreement was consummated and Plaintffs' claims do not arise out of a breach of any such agreement. Defendant Sunset Tan's counsel merely contacted Gabet's counsel about the possibility of entering into a consent agreement, Defendant Sunset Tan never entered the forum state to negotiate the terms of the agreement; it only communicated with Gabet's counsel through its own counsel located in Pennsylvania. Defendant Sunset Tan did not purchase any property from Plaintiffs in Indiana, nor did it make any payments to Plaintiffs in Indiana.

Plaintiffs have also asserted that "the individual defendants are the moving, active, conscious force behind the infringement and thus subject to jurisdiction".  *See Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, 2009 WL 1033818 (N.D. Cal. 2009); *Silverlit Toys Manufactory, Ltd. v. Absolute Toy Marketing, Inc.*, 2007 WL 521239 (N.D.Cal. 2007)(holding that when a corporation is subject to personal jurisdiction in the forum state, an employee who is the moving, active, conscious force behind infringing activity committed by the corporation in the forum is subject to personal jurisdiction).  Plaintiffs are asserting that Defendants Haman and Bozigian are subject to personal jurisdiction by default if the Court finds that it may properly exercise jurisdiction over Defendant Sunset Tan.  As the Court has already held that Defendant Sunset Tan is not subject to general or specific jurisdiction, Plaintiffs' argument fails.

Defendants argue that even if jurisdiction was proper over Defendant Sunset Tan, there is

no basis to assert jurisdiction over Haman and Bozigian. The only thing Haman and Bozigian are alleged to have done is to execute the Agreement with Cal Tan in their capacity as corporate officers of Defendant Sunset Tan. As discussed above, however, all correspondence leading up to the execution of the Agreement were with Cal Tan's office in Los Angeles, California and all negotiations took place in California and Pennsylvania. The Agreement provided that all disputes arising out of the Agreement could only be brought in Los Angeles, California, and all of the manufacturing and labeling of the allegedly infringing products contemplated under the Agreement takes place in New Jersey. There is no evidence to support Plaintiffs' contention that Defendants Haman and Bozigian purposefully availed themselves of the laws of Indiana such that they could foresee getting being sued in Indiana for trademark infringement.

Because of the Court conclusion that it lacks personal jurisdiction over Defendants, it does not address Defendants' arguments concerning venue.

## Conclusion

For the foregoing reasons, Defendants' amended motion to dismiss (DE 19) is GRANTED. Defendants original motion to dismiss (DE 12) is DENIED AS MOOT.

SO ORDERED on March 25, 2010.

s/ Joseph Van Bokkelen
Joseph Van Bokkelen, Judge
United States District Court
Hammond Division